FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

2017 AUG 28 PM 3: 12

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DISTRICT

DEMONTA EADY,

    Plaintiff,

v.

ENHANCED RECOVERY COMPANY, LLC,

    Defendant.
_____/

CASE NO. 3:17-cv-1008-J-32PDB

CLASS ACTION COMPLAINT AND
TRIAL BY JURY DEMAND

## NATURE OF ACTION

1. Plaintiff, Demonta Eady ("Mr. Eady"), brings this putative class action, on behalf of himself and all others similarly situated, against Defendant, Enhanced Recovery Company, LLC ("ERC"), pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.55 *et seq.*

## JURISDICTION, VENUE, AND STANDING

2. This Court has jurisdiction pursuant to 47 U.S.C. § 227(b)(3), *see Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012) (holding that federal courts have concurrent jurisdiction over private actions filed under the TCPA), 15 U.S.C. § 1692k(d), and 28 U.S.C. § 1331.

3. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), where the acts and transactions giving rise to Mr. Eady's action occurred primarily in this district and where ERC transacts business and is headquartered in this district.

4. Mr. Eady has standing under Article III to bring this action based on his allegations that ERC invaded his privacy, intruded upon his seclusion, and engaged in nuisance behavior. *See*

1

*e.g., Florence Endocrine Clinic, PLLC v. Arriva Med., LLC*, 858 F.3d 1362, 1364 (11th Cir. 2017) (standing exists to bring action for violations of "junk fax" provisions); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (standing exists to bring action for unsolicited text messages); *Williamceau v. Dyck-O'Neal, Inc.*, No. 2:16-CV-855-FTM-29CM, 2017 WL 2544872, at *2 (M.D. Fla. June 13, 2017) (citing *Florence* and *Van Patten* favorably and finding standing exists to bring actions for calls made using Livevox autodialer).

## PARTIES

8. Mr. Eady is a natural person who at all relevant times resided in the State of Ohio, County of Franklin, and City of Columbus.

9. Upon information and belief, Mr. Eady is allegedly obligated to pay a debt asserted to be owed or due a creditor other than ERC and is, therefore, a "consumer" as defined by 15 U.S.C. § 1692a(3) and Fla. Stat. § 559.55(8).

10. Upon information and belief, this alleged obligation arises from a transaction in which the money, property, insurance, or services that are the subject of the transaction were incurred primarily for personal, family, or household purposes (the "Debt").

11. ERC is an entity headquartered in Jacksonville, Florida, that at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect a "debt" from Mr. Eady, as defined by 15 U.S.C. § 1692a(5) and Fla. Stat. § 559.55(6).

12. ERC uses instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of any debts, and regularly collects or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, another.

13. ERC is, therefore, a "debt collector" as defined by 15 U.S.C. § 1692a(6) and Fla. Stat. § 559.55(7).

## FACTUAL ALLEGATIONS

14. Mr. Eady is a subscriber of a cellular telephone service and has been assigned a wireless number in connection with such subscription, which is associated with a cellular telephone handset (hereinafter "Mr. Eady's cell phone).

15. In or around August 2016, ERC began placing calls to Mr. Eady's cell phone.

16. The calls to Mr. Eady's cell phone came from 800-875-5164.

17. An internet search for indicates that this number belongs to ERC.

18. Prior to receiving these calls, Mr. Eady had never heard of ERC.

19. ERC has never had a prior existing business relationship with Mr. Eady.

20. ERC does not have and has never had prior express consent to place any calls to Mr. Eady's cell phone.

21. Upon information and belief, ERC is attempting to collect the Debt from Mr. Eady.

22. Every time that Mr. Eady answered a call from ERC, the call would be disconnected.

23. On at least one occasion, Mr. Eady called the number back, whereupon he heard an automated message that stated a name that sounded like his own, indicating that ERC recognized his telephone number when he made the call.

24. In at least one such instance, Mr. Eady eventually reached a live representative and instructed ERC to stop calling him or otherwise informed it that it did not have consent to call him.

25. Notwithstanding, ERC continued to place calls to Mr. Eady's cell phone in the manner described above, including, but not limited to, calls made on the following dates:

    a. August 19, 2016
    b. August 22, 2016
    c. August 23, 2016
    d. August 25, 2016

      e. August 29, 2016
      f. August 30, 2016
      g. August 31, 2016

26. On all but one occasion (August 25, 2016), Mr. Eady answered the call, only to have the call disconnected.

27. Upon information and belief, ERC made the aforementioned calls to Mr. Eady's cell phone using an automatic telephone dialing system and/or an artificial or prerecorded voice system ("the Dialing System").

28. Upon information and belief, the Dialing System is a combination of hardware and software that has the capacity to store telephone numbers to be called and to dial such numbers.

29. Upon information and belief, the Dialing System has the capacity to place a large volume of calls in a short period of time without human intervention.

30. Upon information and belief, ERC attempts to predict the number of calls that will be answered within a certain period of time and places a corresponding number of calls using the Dialing System based on the number of available ERC agents within that time frame.

31. Accordingly, the Dialing System is a predictive dialer.

32. Upon information and belief, the Dialing System uses software, called an "automatic call distributor," to route calls made by the Dialing System's hardware to available ERC agents who have no role in initiating the calls.

33. Upon information and belief, it is precisely *because* the Dialing System places calls in an automated fashion, without any human intervention on the part of a live ERC phone representative, that the calls were disconnected either immediately before or after Mr. Eady answered the phone.

34. Upon information and belief, ERC is aware that its Dialing System disconnects a large number of calls when they are answered by the person it has dialed, but continues to use the Dialing System in this manner anyway.

35. Thus, ERC engaged in the aforementioned conduct willfully.

36. The aforementioned conduct invaded Mr. Eady's privacy, intruded upon his seclusion, and constitutes nuisance behavior.

37. The natural consequence of the aforementioned conduct is to harass, oppress, or abuse the person being called.

38. The aforementioned conduct can reasonably be expected to abuse or harass the person being called.

39. ERC did not place any calls to Mr. Eady's cell phone for emergency purposes.

40. Upon information and belief, ERC intentionally and/or willfully placed the calls identified above to Mr. Eady's cell phone with the knowledge that it was using an automatic telephone dialing system and/or an artificial or prerecorded voice system.

41. Upon information and belief, ERC maintains business records that show all calls ERC placed to Mr. Eady's cell phone using the Dialing System, which may reveal the existence of additional violations beyond those pleaded above.

42. Upon information and belief, the Dialing System is physically located at 4800 Spring Park Road, Jacksonville, FL 32207.

43. Upon information and belief, critical decisions about how to operate the Dialing System are made by ERC's shareholders, management, and/or employees who work at its offices located in the State of Florida—all of which are located in this district.

44. Furthermore, upon information and belief, because the Dialing System relies on an "automatic call distributor," its calls originate from this district, regardless of whether they are intended to be, or ultimately are, routed to an ERC representative located in another state.

45. Thus, the complained-of conduct relates to the collection practices of a Florida collection agency that occur primarily in the State of Florida.

## CLASS ALLEGATIONS

46. Mr. Eady repeats and re-alleges all factual allegations above.

47. Upon information and belief, in the year prior to the filing of this action, ERC has used the Dialing System to make calls to a large number of consumers around the country in an attempt to collect debts from them or someone else ERC believes is associated with their number.

48. Upon information and belief, ERC has called a large number of these consumers on their cell phones using the Dialing System without regard to whether it has the called party's consent to do so, because it believes that the Dialing System is not regulated by the TCPA.

49. Upon information and belief, ERC maintains 'call detail records' that indicate whether such calls were automatically disconnected, as in the case of Mr. Eady.

50. Upon information and belief, ERC maintains other business records, such as account notes and audio recordings, that reflect when a consumer places a call to ERC and instructs it to stop calling them or otherwise indicates that ERC does not have consent to call.

51. Mr. Eady brings this action on behalf of himself and all others similarly situated. Specifically, Mr. Eady seeks to represent the following classes of individuals:

    a.    <u>TCPA Class</u>

    All persons in the United States, to whom ERC—in the four years prior to the filing of the original complaint in this action through the date of class certification—placed a call using the Dialing System to such person's cellular telephone.

    b.    <u>TCPA Subclass</u>

All persons in the United States, to whom ERC—in the four years prior to the filing of the original complaint in this action through the date of class certification—placed a call using the Dialing System to such person's cellular telephone, after such person informed ERC that it did not have consent to call them.

    c.    <u>FDCPA Class</u>

All individuals in the United States, to whom ERC—in the year prior to the filing of the original complaint in this action through the date of class certification—placed a call using the Dialing System in an attempt to collect a debt and where ERC automatically disconnected the call before or after it was answered.

    d.    <u>FCCPA Class</u>

All individuals in the United States, to whom ERC—in the two years prior to the filing of the original complaint in this action through the date of class certification—placed a call using the Dialing System in an attempt to collect a debt and where ERC automatically disconnected the call before or after it was answered.

52. The proposed classes specifically exclude the United States of America, the State of Florida, counsel for the parties, the presiding United States District Court Judge, the Judges of the United States Court of Appeals for the Eleventh Circuit, and the Justices of the United States Supreme Court, all officers and agents of ERC, and all persons related to within the third degree of consanguinity or affection to any of the foregoing persons.

53. Because ERC uses the Dialing System to place a large volume of calls, the class is so numerous that joinder of all members is impracticable.

54. The exact number of class members is unknown to Mr. Eady at this time and can be ascertained only through appropriate discovery.

55. The classes are ascertainable in that the names and addresses of all class members can be identified based on information contained within business records maintained by ERC.

56. There exists a well-defined community of interest in the questions of law and fact involved that affect the parties to be represented. These common questions of law and fact predominate over questions that may affect individual class members. Such issues include, but are not limited to: (a) the existence of ERC's identical conduct particular to the matters at issue; (b) ERC's violations of the TCPA, FDCPA, and/or FCCPA; (c) the availability of injunctive relief for the TCPA and FCCPA classes, (d) the availability of punitive damages and other equitable relief for the FCCPA class, (e) the availability of statutory penalties; and (f) attorney's fees and costs.

57. The claims of Mr. Eady are typical of the claims of the classes he seeks to represent. The claims of Mr. Eady and of the classes originate from the same conduct, practice, and procedure on the part of ERC, as they derive from ERC's indiscriminate use of the Dialing System. Thus, if brought and prosecuted individually, the claims of each class member would require proof of the same material and substantive facts.

58. Mr. Eady possesses the same interests and has suffered the same injuries as each class member. Mr. Eady asserts identical claims and seeks identical relief on behalf of the unnamed class members.

59. Mr. Eady will fairly and adequately protect the interests of the classes and has no interest adverse to or which directly and irrevocably conflicts with the interests of other class members. Mr. Eady is willing and prepared to serve this Court and the proposed classes. The interests of Mr. Eady are co-extensive with and not antagonistic to those of the absent class members.

60. Mr. Eady has retained the services of counsel who are experienced in consumer protection claims, as well as complex class action litigation, will adequately prosecute this action, and will assert, protect and otherwise represent Mr. Eady and all absent class members.

61. Certification of the TCPA and FCCPA classes is appropriate under Fed. R. Civ. P. 23(b)(2) in that ERC has acted or refused to act on grounds generally applicable to these classes, making final declaratory and/or injunctive relief appropriate.

62. Certification of all classes is appropriate under Fed. R. Civ. P. 23(b)(3) in that the questions of law and fact that are common to members of the classes predominate over any questions affecting only individual members.

63. Moreover, a class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint in that: (a) individual claims by the class members will be impracticable as the costs of pursuit would far exceed what any one plaintiff or class member has at stake; (b) as a result, very little litigation has been commenced over the controversies alleged in this Complaint and individual members are unlikely to have an interest in prosecuting and controlling separate individual actions; and (c) the concentration of litigation of these claims in one forum will achieve efficiency and promote judicial economy.

## COUNT I
## VIOLATION OF 47 U.S.C. § 227(b)(1)(A)(iii)

64. Mr. Eady repeats and re-alleges each and every factual allegation above.

65. Under the TCPA, it is "unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice…to any… cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

66. ERC violated 47 U.S.C. § 227(b)(1)(A)(iii) placing calls to Mr. Eady's cell phone using the Dialing System without prior express consent and for non-emergency purposes.

67. ERC violated 47 U.S.C. § 227(b)(1)(A)(iii) willfully and/or knowingly when it engaged in such conduct knowing it did not have Mr. Eady's prior express consent.

WHEREFORE, Mr. Eady prays for relief and judgment, as follows:

a) Determining that this action is a proper class action, certifying Mr. Eady as a class representative under Rule 23 of the Federal Rules of Civil Procedure of the TCPA classes, and designating this Complaint the operable complaint for class purposes;

b) Adjudging that ERC violated 47 U.S.C. § 227(b)(1)(A)(iii) with respect to Mr. Eady and the TCPA classes;

c) Enjoining ERC from placing any further telephone calls to Mr. Eady and the other members of the TCPA classes in violation of the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(A);

d) Awarding Mr. Eady and the other members of the TCPA classes statutory damages in the amount of $500.00 per violation, pursuant to 47 U.S.C. § 227(b)(3)(B);

e) In the alternative, awarding Mr. Eady and the other members of the TCPA classes actual damages, pursuant to 47 U.S.C. § 227(b)(3)(B);

f) Awarding Mr. Eady and the other members of the TCPA classes treble damages, pursuant to 47 U.S.C. § 227(b)(3);

g) Awarding reasonable attorneys' fees and costs incurred in this action in accordance with Rule 23;

h) Awarding pre-judgment and post-judgment interest as permissible by law; and

i) Awarding such other and further relief as the Court may deem proper.

## COUNT II
## VIOLATION OF 15 U.S.C. § 1692d

68. Mr. Eady repeats and re-alleges each factual allegation contained above.

69. Under the FDCPA, "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d.

70. ERC violated 15 U.S.C. § 1692d calling Mr. Eady's cell phone and terminating the call before or immediately after he answered the phone.

71. In addition, or in the alternative, ERC violated 15 U.S.C. § 1692d by using the Dialing System to call Mr. Eady's cell phone with the knowledge that there was a high likelihood that it would terminate before or immediately after he answered the phone.

WHEREFORE, Mr. Eady prays for relief and judgment, as follows:

a) Determining that this action is a proper class action, certifying Mr. Eady as a class representative under Rule 23 of the Federal Rules of Civil Procedure of the FDCPA class, and designating this Complaint the operable complaint for class purposes;

b) Adjudging that ERC violated 15 U.S.C. § 1692d with respect to Mr. Eady and the other members of the FDCPA class;

c) Awarding Mr. Eady and the other members of the FDCPA class actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

d) Awarding Mr. Eady statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A) and/or 15 U.S.C. § 1692k(a)(2)(B)(i), in the amount of $1,000.00;

e) Awarding such amount as the Court may allow for all other members of the FDCPA class, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 percent of the net worth of ERC, pursuant to 15 U.S.C. § 1692k(a)(2)(B)(ii);

f) Awarding Mr. Eady reasonable attorneys' fees and costs incurred in this action

pursuant to 15 U.S.C. § 1692k(a)(3) and/or Rule 23;

g) Awarding pre-judgment and post-judgment interest as permissible by law; and

h) Awarding such other and further relief as the Court may deem proper.

## COUNT III
## VIOLATION OF FLA. STAT. § 559.72(7)

72. Mr. Eady repeats and re-alleges each factual allegation contained above.

73. Under the FCCPA, "[i]n collecting consumer debts, no person shall… willfully engage in [] conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family." Fla. Stat. § 559.72(7).

74. ERC violated Fla. Stat. § 559.72(7) by calling Mr. Eady's cell phone and terminating the call before or immediately after he answered the phone.

75. In addition, or in the alternative, ERC violated Fla. Stat. § 559.72(7) by using the Dialing System to call Mr. Eady's cell phone with the knowledge that there was a high likelihood that it would terminate before or immediately after he answered the phone.

WHEREFORE, Mr. Eady prays for relief and judgment, as follows:

a) Determining that this action is a proper class action, certifying Mr. Eady as a class representative under Rule 23 of the Federal Rules of Civil Procedure of the FCCPA class, and designating this Complaint the operable complaint for class purposes;

b) Adjudging that ERC violated Fla. Stat. § 559.72(7) with respect to Mr. Eady and the FCCPA class;

c) Awarding Mr. Eady and the members of the FCCPA class actual damages pursuant to Fla. Stat. § 559.77(2);

d) Awarding Mr. Eady statutory damages pursuant to Fla. Stat. § 559.77(2), in the amount of $1,000.00;

e) Awarding all other members of the FCCPA class such amount as the court may allow, not to exceed the lesser of $500,000 or one percent of ERC's net worth, up to $1,000 per class member, pursuant to Fla. Stat. § 559.77(2);

f) Awarding Mr. Eady and the members of the FCCPA class punitive damages pursuant to Fla. Stat. § 559.77(2);

g) Enjoining ERC from placing any further calls to Mr. Eady and the other members of the FCCPA classes in violation of the FCCPA, and granting any other equitable relief as the Court deems necessary or proper, pursuant to Fla. Stat. § 559.77(2);

h) Awarding Mr. Eady reasonable attorneys' fees and costs incurred in this action pursuant to Fla. Stat. § 559.77(2) and/or Rule 23;

i) Awarding pre-judgment and post-judgment interest as permissible by law; and

j) Awarding such other and further relief as the Court may deem proper.

## TRIAL BY JURY

76. Mr. Eady is entitled to and hereby demands a trial by jury.

Dated: August 25, 2017.

Respectfully submitted,

/s/ Alex D. Weisberg
Alex D. Weisberg (FBN: 0566551)
Weisberg Consumer Law Group, PA
Attorneys for Mr. Eady
5846 S. Flamingo Rd, Ste. 290
Cooper City, FL 33330
(954) 212-2184
(866) 577-0963 fax
aweisberg@afclaw.com

Correspondence address:
Thompson Consumer Law Group, PLLC
5235 E. Southern Ave. D106-618
Mesa, AZ 85206